13-3125.131-JCD                                          September 26, 2013

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ELMHURST & DEMPSTER LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 3125 |
| ) | |
| FIFTH THIRD BANK, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Fifth Third Bank, to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is granted in part and denied in part.

**BACKGROUND**

This is an action for breach of contract, tortious interference with prospective business expectancy, and fraudulent misrepresentation that was removed to this court from the Circuit Court of Cook County on the basis of diversity jurisdiction. The action relates to a Ground Lease (the "Lease") for the property located at 851 South Elmhurst Road in Des Plaines, Illinois. The Lease was entered into on January 16, 2008 by defendant Fifth Third Bank ("Fifth Third"), as tenant, and non-party VH Illinois Des Plaines I LLC ("VH"), as the original landlord. Plaintiff, Elmhurst & Dempster LLC ("Elmhurst"), later assumed all of VH's

- 2 -

rights and obligations under the Lease and took over as landlord. Elmhurst and Fifth Third subsequently entered into two amendments to the Lease, which ratified the Lease except as expressly amended. (The amendments are not at issue here.) Copies of the Lease and its Amendments are attached to the complaint.

Paragraph 35 of the Lease granted Fifth Third, as Tenant, a Right of First Refusal ("ROFR") as follows:

> 35. **RIGHT OF FIRST REFUSAL.** Tenant shall have the preemptive right during the [Lease] Term and any Extension that has been exercised to purchase the Property (by itself or together with the Adjacent Property) on the same terms and conditions as those of any bona fide offer received by and acceptable to Landlord. Before making any sale or any agreement to sell, Landlord shall notify Tenant in writing of the terms and conditions of such offer. Tenant, within thirty (30) days after receipt of such notice, may exercise this preemptive right by written notice to Landlord. Failure of Tenant to exercise this preemptive right on one or more occasions shall not affect Tenant's right to exercise it on any subsequent occasion. Any sale or transfer of the Property (by itself or together with the Adjacent Property) shall be expressly made subject to all of the terms, covenants and conditions of this Lease.

(Compl., Ex. A.)

On October 15, 2012, Elmhurst received a letter from Keeler-FOG Real Estate ("Keeler-FOG") that contained a "proposal that Keeler-FOG Real Estate . . . shall purchase from Owner of Record" the subject property. The letter contained "general terms and conditions," including a purchase price of $4,867,924.53; the execution of a purchase and sale agreement within seven days after the signing of "this Letter of Intent"; the deposit in escrow of

- 3 -

$100,000 earnest money; various conditions for the benefit of the buyer to be satisfied within a fourteen-day contingency period; and a closing no later than December 28, 2012. (Compl., Ex. D.) On October 26, 2012, Elmhurst sent a letter to Fifth Third stating: "Pursuant to Paragraph 35 of the Ground Lease dated January 16, 2008, the Landlord hereby provides notice that Landlord has received a bona fide offer to purchase the property which is acceptable to Landlord. A copy of that offer (from Keeler-FOG dated October 15, 2012) is enclosed. Please advise whether or not Tenant is exercising its preemptive right under the Ground Lease." (Compl., Ex. E.)

The same day, a representative of Fifth Third contacted Elmhurst's counsel, Todd Van Baren, by e-mail and stated that Fifth Third was "interested" but "believe[d] the numbers [we]re off in the offer [Elmhurst] received." (Compl., Ex. F.) A few days later, on October 30, 2012, Mr. Van Baren responded that Elmhurst had "confirmed with Keeler-FOG that [its] offer st[ood] as presented (subject only to a credit at closing of about $23,000 to adjust for the rental differential [Fifth Third] raised)." (Compl., Ex. F.) Fifth Third replied, "We are going to exercise our option." (Compl., Ex. G.) Another representative of Fifth Third, Randall L. Morrissey, then sent Elmhurst an e-mail on October 30, 2012, stating: "[T]his e-mail will serve as confirmation that Fifth

- 4 -

Third Bank is exercising its ROFR right to purchase the property . . . ." (Compl., Ex. H.)

During the month of November 2012, Elmhurst and Fifth Third negotiated a written purchase agreement, the language of which appeared to be finalized on November 26. Thereafter, in late November and early December, Mr. Van Baren sent Fifth Third's counsel, C. Todd Burbank, a series of e-mails asking about when Fifth Third would be delivering Elmhurst a signed purchase agreement. (Compl., Exs. L-N.) On December 5, 2012 Mr. Burbank stated that the agreement had been "held up" at Fifth Third's headquarters, but was "in [the] process of being signed." (Compl., Ex. M.)

On December 14, 2012, after Mr. Van Baren asked again about the status of the contract signing, Mr. Burbank told him that "it sounds like [Fifth Third] will not be able to get appropriations approval for this property in time to close in 2012." (Compl., Ex. O.) Mr. Van Baren responded that Fifth Third was "not really negotiating some deal in the abstract" and had "exercised a right of first refusal to take the deal that [Elmhurst] had been offered by another buyer who was ready to close," and that a "key part of that deal (as reflected in the letter of intent and in the fully negotiated contract) was a closing by 12/28/12." He also stated that Elmhurst "would like to execute the contract as soon as

possible, with a closing date as soon as is possible." (Compl., Ex. O.)

Mr. Burbank replied that there was "no way [Fifth Third] could close this [deal] in 2012" and that "[a]lthough [Fifth Third] may be interested in buying the property in 2013, if [Elmhurst] has a potential buyer for the property in 2012, I suppose [Elmhurst] should pursue that deal if it makes sense for [it]." (Compl., Ex. O.) (Elmhurst alleges that pursuing a sale to Keeler-FOG in 2012 "was not possible" at that point, Compl. ¶ 30.) Mr. Van Baren told Mr. Burbank that the "other potential buyer is gone now because of [Fifth Third's] exercise of the right of first refusal . . . weeks ago," and he inquired whether Fifth Third would be willing to enter into a contract as soon as it had appropriated the funds, even if that meant closing in 2013, and if so, when would funds "realistically" be appropriated. (Compl., Ex. P.) It is alleged that Fifth Third "made representations to Elmhurst that the sale of the Property would close in 2013" but nonetheless failed to purchase the property. (Compl. ¶¶ 33-34.) The property is currently listed for sale, but has not been sold. (Compl. ¶ 37.)

This lawsuit ensued. In Count I, Elmhurst alleges that once Fifth Third exercised its ROFR, it "was obligated to purchase" the property from Elmhurst, and because it did not do so, it breached the terms of the Lease. Elmhurst alleges that as a result of the breach, it lost the opportunity to sell the property in 2012 to

- 6 -

Keeler-FOG at the price offered by Keeler-FOG, "incurred carry costs [and] legal expenses," and "suffered adverse tax consequences." (Compl. ¶ 49.) Elmhurst seeks compensatory damages, attorneys' fees, and costs in Count I.

In Count II, Elmhurst alleges that it had reasonably expected to consummate a sale of the property to Keeler-FOG, that Fifth Third "exercised the ROFR under the Ground Lease to prevent Keeler-FOG's offer to purchase the Property from maturing into an actual sale of the Property" and that Fifth Third "knew that by exercising its ROFR, Keeler-FOG would not purchase the Property." (Compl. ¶¶ 52, 54, 61.) Elmhurst states that it "was injured by Fifth Third's actions in an amount in excess of $50,000" by virtue of losing the opportunity to sell to Keeler-FOG in 2012, and it seeks compensatory damages and costs in Count II.

Elmhurst alleges in Count III that after receiving the notice of Keeler-FOG's proposal, Fifth Third "made a number of false statements of fact to Elmhurst" regarding its intent to purchase the property, with the "knowledge or belief that they were false." (Compl. ¶¶ 64-65.) It is further alleged that Fifth Third made these statements "to guide Elmhurst's business decisions during the sale of the Property and to induce Elmhurst not to move forward with the sale of the Property to Keeler-FOG" and that Elmhurst justifiably relied on the statements to its detriment. (Compl. ¶¶

- 7 -

66-69.) Elmhurst seeks compensatory and punitive damages in Count III.

Fifth Third moves to dismiss the complaint for failure to state a claim.

## DISCUSSION

Under federal notice-pleading standards, a complaint need not contain "detailed factual allegations," but it must have more than mere "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain sufficient facts to raise a plaintiff's right to relief above a "speculative" level, id. at 555, and the claim must be "plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### A. Count I (Breach of the Lease)

Elmhurst's contractual claim is that "Fifth Third exercised its 'right to purchase' the property and breached the Lease by not doing so." (Pl.'s Opp'n at 8.) Fifth Third first contends that Count I should be dismissed because the Keeler-FOG proposal was not a "bona fide offer," as required by paragraph 35 of the Lease, and accordingly did not provide the basis for an enforceable exercise of the ROFR.

- 8 -

In opposition, Elmhurst argues that "it is irrelevant that the terms of the Keeler proposal were contingent and may have changed had Keeler and Elmhurst continued forward to close the sale of the property" because "[b]y exercising its rights under the ROFR, Fifth Third converted those contingent terms into definite terms of a binding agreement and agreed to 'purchase' the property on the terms included in Keeler's proposal." (Pl.'s Opp'n at 6-7.) Elmhurst cites Illinois case law standing for the proposition that a right of first refusal is enforceable by a tenant against a landlord where the terms of a third party's offer are sufficiently definite and are met by the tenant.[1] Elmhurst also asserts that we should reject Fifth Third's "bald assertion" that the Keeler-FOG proposal was not a bona fide offer, reasoning that "Fifth Third's exercise of the ROFR, in and of itself, concedes that the offer was bona fide." (Pl.'s Opp'n at 7.)

It begs the question to assume that Fifth Third did, in fact, exercise its ROFR under the terms of the Lease. The Lease gives Fifth Third the right to purchase the property on the same terms and conditions as those of any "bona fide offer received by and acceptable to" Elmhurst. Illinois law distinguishes between offers and letters of intent. An "offer" "must be so definite as to its material terms or require such definite terms in the acceptance

---

[1] Kellner v. Bartman, 620 N.E.2d 607 (Ill. App. Ct. 1993); Vincent v. Doebert, 539 N.E.2d 856 (Ill. App. Ct. 1989). The parties agree that Illinois law controls.

that the promises and performances to be rendered by each party are reasonably certain." Kipnis v. Mandel Metals, Inc., 741 N.E.2d 1033, 1037 (Ill. App. Ct. 2000). Letters of intent are not necessarily enforceable unless the parties intend for them to be contractually binding. Quake Constr., Inc. v. American Airlines, Inc., 565 N.E.2d 990, 993-94 (Ill. 1990). In Kipnis, the court concluded that a letter that stated that "the provisions contained herein are not binding on the parties unless specifically so stated, except to the extent that they reflect the intent of the parties to enter into further negotiations and to develop a definitive written agreement" was a non-binding letter of intent, not a bona fide offer. 741 N.E.2d at 1037-38.

The complaint alleges that Elmhurst received a "bona fide offer" from Keeler-FOG, Compl. ¶ 43, but the Keeler-FOG letter contradicts this allegation. "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." Bogie v. Rosenberg, 705 F.3d 603, 609 (7th Cir. 2013). The letter, attached as an exhibit to the complaint, states:

> This Letter of Intent is a non-binding agreement between the parties and is a guide to the preparation of a mutually satisfactory Agreement. Within three (3) days of execution of this letter, Purchaser's counsel shall prepare a draft Agreement and the parties shall work diligently towards the execution of the Agreement.

(Compl., Ex. D, at 3.) By referring to its proposal as a "non-binding" "letter of intent" and a "guide to the preparation of a

mutually satisfactory agreement," Keeler-FOG unambiguously expressed an intent not to be bound by the terms of the proposal. The letter did not invite acceptance that would bind the parties to a purchase agreement, so it did not constitute a bona fide offer.

The decisions Elmhurst cites are inapposite because they involved offers, with sufficiently definite terms. Moreover, in those cases, the ROFR was enforced against the landlord, not the tenant. Elmhurst's claim for breach of contract is curious because it is claiming a breach of the Lease, which did not itself create any obligation of Fifth Third to purchase the property. Elmhurst maintains that "[i]f Fifth Third could have backed out of the deal for any reason simply because one of the terms of the offer stated that the offer was contingent, then the ROFR would have been meaningless and would have offered no safeguard to Elmhurst that it would be assured of closing the transaction at the terms received in the offer even after Fifth Third's exercise of its ROFR." (Pl.'s Opp'n at 8.) This contention is flawed because it presupposes that Keeler-FOG made an enforceable offer. It also misapprehends the purpose of the ROFR, which was to benefit Fifth Third, not Elmhurst. Elmhurst alleges that Fifth Third breached the *Lease*, not any other agreement between the parties. But the ROFR as set forth in the Lease was never triggered, because the Keeler-FOG proposal, by its express terms, was not an offer. And even if it had been, it does not seem to us that any ensuing

- 11 -

exercise of the ROFR could result in a subsequent breach of contract claim by Elmhurst that would arise out of the *Lease*. Accordingly, Count I will be dismissed, and we need not discuss Fifth Third's alternative arguments for dismissing this claim. The dismissal will be with prejudice because we do not see a possibility of successful amendment.

**B.    Count II (Tortious Interference With a Business Expectancy)**

In Count II, Elmhurst alleges that Fifth Third exercised its ROFR "to tie up or prevent the Property from being sold until it could decide whether it would go forward with the purchase." (Compl. ¶ 57.)  The elements of the tort of interference with prospective business expectancy include (1) plaintiff's reasonable expectation of entering into a valid business relationship; (2) defendant's knowledge of plaintiff's expectancy; (3) purposeful or intentional interference by defendant that prevents plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to plaintiff resulting from such interference.  Miller v. Lockport Realty Group, Inc., 878 N.E.2d 171, 176 (Ill. App. Ct. 2007).

Fifth Third argues that Elmhurst fails to sufficiently allege that Fifth Third's actions were "unjustified or malicious." (Def.'s Mem. in Supp. of Mot. at 9-10.)  Elmhurst correctly responds that under Illinois law, a plaintiff must plead and prove that the defendant's conduct was unjustified or malicious only when

- 12 -

"the existence of a privilege in favor of the defendant is apparent on the face of a claim for tortious interference with prospective business advantage." Miller, 878 N.E.2d at 177; see also HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 677 (Ill. 1989). "[A]n individual has a general duty not to interfere with the business affairs of another, but he may be privileged to interfere, depending on his purpose and methods, when the interference takes a socially sanctioned form, such as lawful competition." Miller, 878 N.E.2d at 176.

As discussed above, since the exhibits attached to the complaint make clear that Fifth Third was not exercising its ROFR under the Lease, we will construe the allegations in Count II as simply being directed to Fifth Third's alleged conduct when it was negotiating with Elmhurst. With regard to that alleged conduct, we cannot say that the existence of a privilege in favor of Fifth Third is apparent. In its opening memorandum, Fifth Third does not argue that its actions were privileged; it does not even mention the concept of privilege. It does present a privilege argument in its reply brief, but we will not consider it. Arguments raised for the first time in a reply brief are waived. See Mendez v. Perla Dental, 646 F.3d 420, 423-24 (7th Cir. 2011).

Fifth Third also contends that Elmhurst's allegation that Fifth Third acted in order to "tie up or prevent the property from being sold until it could decide whether it would go forward with

- 13 -

the purchase" "makes no sense" because Elmhurst already had a thirty-day window to exercise its ROFR pursuant to the Lease. (Def.'s Mem. in Supp. of Mot. at 10.)  We are unpersuaded; Fifth Third's stalling conduct is alleged to have occurred after the thirty-day period expired.

Fifth Third's motion will be denied as to Count II.

## C.   Count III (Fraudulent Misrepresentation)

The elements of common-law fraud are (1) a false statement of material fact; (2) the speaker's knowledge or belief that the statement was false; (3) the speaker's intent that the statement induce the recipient to act; (4) the recipient's belief and reliance on the statement and right to do so; and (5) damages resulting from the reliance.  All Am. Roofing, Inc. v. Zurich Am. Ins. Co., 934 N.E.2d 679, 690 (Ill. App. Ct. 2010).  In Count III, Elmhurst alleges that Fifth Third "made a number of false statements of fact to Elmhurst," which "included":

> a. [Vice President] Randall L. Morris[s]ey's statement in an email to counsel for Elmhurst on October 30, 2012: "[T]his email will serve as confirmation that Fifth Third Bank is exercising its ROFR right to purchase the [Property].";
> 
> b.  Todd C. Burbank's statement in an email to counsel for Elmhurst on November 28, 2012: ["]I expect [Fifth Third will forward a signed contract to Elmhurst] late this week or early next week.";
> 
> c.  Todd C. Burbank's statement in an email to counsel for Elmhurst on December 5, 2012: "I'm told the [purchase agreement] was held up at headquarters, but is now in the process of being signed."'

- 14 -

  d. That Fifth Third had given funding authority to close the sale of the Property in 2012;

  e. That Fifth Third would purchase the Property in 2013.

(Compl. ¶ 64.) It is alleged that "Fifth Third made these statements to Elmhurst with knowledge or belief that they were false." (Compl. ¶ 65.)

  Fifth Third asserts that alleged misrepresentations (d) and (e) fail to comply with Federal Rule of Civil Procedure 9(b), which requires plaintiffs to allege the circumstances of fraud with particularity. "This means the who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). We agree. Because Elmhurst has failed to provide these particulars, statements (d) and (e) cannot serve as a basis for its fraud claim.

  As for alleged misrepresentations (a), (b), and (c), we agree with Fifth Third that Elmhurst has failed to sufficiently allege that the party making the statements knew that they were false when made. The complaint simply alleges that "Fifth Third" made these statements with the knowledge that they were false, not that Messrs. Morrissey and Burbank did so. Elmhurst argues that its allegations are sufficient because it "has alleged that these employees and representatives knew that no appropriations had been approved for the transaction when they made the statements," citing paragraph 65 of the complaint. (Pl.'s Opp'n at 15.) But that is not what Elmhurst has alleged; it has alleged nothing about the

knowledge or beliefs of Messrs. Morrissey or Burbank, and it also has not alleged that either individual did not *expect* any appropriation to be made for the purchase. Moreover, we agree with Fifth Third that Mr. Morrissey's statement is not an actionable statement of fact, but rather language intended to exercise a contractual right.

There is another problem with Count III. Elmhurst concedes that its claim essentially relies on false statements of intent regarding future conduct. (Pl.'s Opp'n at 13.) This is known as promissory fraud, which is generally not actionable in Illinois except where the statements are part of a scheme to defraud. See HPI Health Care, 545 N.E.2d at 682 ("[M]isrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud."); Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc., 493 F.3d 841, 853 (7th Cir. 2007) ("Illinois law does not allow . . . plaintiffs to proceed on a fraud claim when the evidence of intent to defraud consists of nothing more than unfulfilled promises and allegations made in hindsight."). Our Court of Appeals has summarized the exception as follows: "[P]romissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." Desnick v. Am. Broad. Cos., 44

- 16 -

F.3d 1345, 1354 (7th Cir. 1995). Elmhurst's allegations do not sufficiently allege that Fifth Third made a promise to purchase property without the intent to do so, but even if they did, such a promise cannot be considered "particularly egregious," and Elmhurst has failed to allege a larger pattern of deception with the particularity required by Rule 9(b).

Count III will be dismissed without prejudice.[2]

## CONCLUSION

For the foregoing reasons, the motion of defendant, Fifth Third Bank, to dismiss the complaint [7] is granted in part and denied in part. The motion is granted as to Count I, which is dismissed with prejudice, and as to Count III, which is dismissed without prejudice. It is denied as to Count II.

The stay of discovery entered on August 14, 2013 is lifted, and the parties are directed to proceed with discovery.

A status hearing is set for October 23, 2013 at 11:00 a.m.

DATE:          September 26, 2013

ENTER:         _____
               John F. Grady, United States District Judge

---

[2] Elmhurst may seek leave to file an amended Count III at such time as it believes it has a fraud claim that is plausible in light of the analysis in this opinion.